# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT BARRETT, | ) 1:07cv1418 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Albert Barrett ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of United States Magistrate Judge Gary A. Austin, and the case was reassigned on February 4, 2008. On December 24, 2008, Judge Austin recused himself and the action was assigned to Magistrate Judge Dennis L. Beck.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed his applications on July 27, 2004, alleging disability since July 2, 2004, due to a pelvic fracture and being a "slow learner."  AR 336-338, 389-395, 542-544.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 301-305, 308-313, 314.  On October 5, 2006, ALJ Michael Haubner held a hearing.  AR 546-563.  ALJ Haubner denied benefits on November 29, 2006.  AR 16-25.  The Appeals Council denied review on July 31, 2007.  AR 8-10.

Plaintiff filed a previous application on September 24, 2001, alleging disability due to a pelvic fracture.  The application was granted on January 29, 2004, for a closed period of disability beginning on August 11, 2001, and ending on June 1, 2003, as Plaintiff had resumed working.  AR 26-33, 81.

Hearing Testimony

On October 5, 2006, ALJ Haubner held a hearing in Fresno, California.  Plaintiff appeared with his attorney, Robert Christenson.  Vocational expert ("VE") Judith Najarian also appeared and testified.  AR 546.

Plaintiff testified that he completed the 12th grade and was 36 years old at the time of the hearing.  He last worked full-time in January 2005.  AR 549.  He lives in a mobile home with his ex-wife and pets.  AR 550, 553.  Plaintiff has a driver's license and drives about 10 times a day to see his friends.  He is able to care for his personal needs, prepare meals twice a day, clean dishes and shop once a day.  AR 551-552.  He eats out once a week and likes to watch football on television.  AR 552.  Plaintiff also spends about two hours a day doing yard work and cleans the kitchen twice a day, for 45 minutes a time.  AR 554.  He spends an hour a day sweeping.  AR 554.

Plaintiff estimated that he could lift and carry about five pounds.  AR 555.  He could stand for 30 minutes and could walk about two miles before needing to rest.  He could sit for 45 minutes.  AR 556-557.  He has trouble sleeping and thought he slept for about 6 hours a night.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff explained that he lays down for 30 minutes and elevates his feet once a day. AR 556-557. He thought he could pay attention for about 30 minutes at a time. AR 557.

In response to his attorney's questions, Plaintiff testified that he was in a special education math class in ninth grade. AR 557.

The VE testified that Plaintiff's work as a fast food worker, as performed, was at the medium, unskilled level. His security guard position, as performed, was light and semi-skilled. AR 559.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. This person could occasionally lift and carry twenty pounds, ten pounds frequently. This person could not perform the fast food position as performed, but could perform it as the Dictionary of Occupational Titles describes it. He could also perform the world of unskilled light and sedentary jobs. AR 560.

For the second hypothetical, the ALJ asked the VE to assume that this person was moderately limited in the ability to understand, remember and carry out detailed instructions. This person could perform the fast food position, as well as unskilled work at all levels. AR 561.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift and carry five pounds, could concentrate 30 minutes at a time and could walk for two miles before needing to stop. This person can also stand for 30 minutes at a time, sit for 45 minutes at a time, and would need one 30 minute unscheduled break a day. The VE responded that this person could not perform Plaintiff's past work or any other position in the national economy. AR 561.

Medical Record

In August 2001, Plaintiff was struck by a car while riding his bicycle. He sustained multiple injuries, including a fractured pelvis and closed head trauma. AR 145-162. He attended subsequent physical therapy and in October 2001, he was noted to have improved, although he was still "impulsive and unsafe in his gait." AR 164-173.

Plaintiff began seeing Cary Tanner, M.D., on September 4, 2001. He referred to Plaintiff as a "developmentally disabled male." Plaintiff had been compliant with treatment and was using a wheelchair. He had minimal resting discomfort and could sit comfortably. AR 246.

1    On September 27, 2001, Dr. Tanner noted that Plaintiff was not especially tender and was
2 healing well. AR 244. X-rays taken the same day show "significant pelvic trauma." AR 245.
3    X-rays obtained on October 18, 2001, revealed a stable separation of the pubic symphysis
4 with fractures of the right pubic bone. AR 243.
5    On January 8, 2002, Leslie H. Lessenger, Ph.D., performed a psychological evaluation.
6 Plaintiff complained of continued pelvic pain with sitting, standing and walking. He said at the
7 time of the accident, he had been working at McDonald's for over a year. On mental status
8 examination, Plaintiff had a "child-like quality in his interaction," but was organized to person,
9 time, place and the nature of his situation. There was no evidence of a thought disorder. He was
10 sometimes depressed since the accident, and had nightmares and panic symptoms. Testing
11 revealed borderline intellectual functioning. Dr. Lessenger diagnosed borderline intellectual
12 functioning, moderate psychosocial stressors (unemployment and pain) and a GAF of 55.
13 Plaintiff displayed poor judgment and impulsivity, although he had a relatively successful job
14 history. Given his previous independent living and work status, a diagnosis of mental retardation
15 was inappropriate. Moreover, Plaintiff's complaints centered on his pelvic fracture, not any
16 cognitive deficits. AR 201-204.
17    Dr. Lessenger opined that Plaintiff would not have any restrictions in activities of daily
18 living or maintaining social functioning. His concentration, persistence and pace were consistent
19 with borderline intellectual ability, and Plaintiff was impulsive and tended to work quickly and
20 carelessly. His ability to understand, carry out and remember simple instructions, as well as his
21 ability to respond appropriately to co-workers, supervisors, the public and usual work situations
22 were also consistent with his borderline intellectual functioning. AR 204.
23    Dr. Tanner indicated on December 7, 2001, that Plaintiff would likely be able to return to
24 light work within 12 months. AR 239.
25    On December 11, 2001, Plaintiff returned to Dr. Tanner and complained of discomfort in
26 his left leg. AR 237.
27    On February 2, 2002, State Agency physician Allen Peddleton, Ph.D., completed a
28 Mental Residual Functional Capacity Assessment. He opined that Plaintiff was moderately

limited in his ability to understand, remember and carry out detailed instructions.  He believed that Plaintiff could perform simple directions.  AR 227-229.  This assessment was affirmed by Dr. Garcia on September 27, 2002.  AR 229.

Plaintiff underwent an MRI of his lumbar spine on February 6, 2002.  The test showed mild stenosis at L4-5 and minimal central posterior disc bulge at L5-S1.  AR 235-236.

Plaintiff returned to Dr. Tanner on February 21, 2002.  He was strongly opposed to surgical intervention but would be willing to try an epidural injection.  AR 234.

Plaintiff saw Dr. Tanner on March 29, 2002.  He indicated that he was doing "much better" after the epidural.  Dr. Tanner noted that the MRI showed mild stenosis and degenerative changes at the L4-5 disc.  He believed that Plaintiff was able to return to work, and Plaintiff felt capable of doing so, on April 1, 2002.  AR 233.

In May 2002, Plaintiff saw Chi Nguyen, M.D., for back pain.  He was not taking any medication and was working part-time.  Dr. Nguyen diagnosed back pain and prescribed Motrin 800mg.  AR 277.

On October 10, 2002, Plaintiff saw Dr. Nguyen in follow-up for his back pain.  On examination, he was tender in the lower thoracic to lumbar spine.  Plaintiff reported that he could sit all day without problem, but could not stand more than 30 minutes.  AR 276.

Plaintiff received treatment in the emergency room on February 11, 2003, for complaints of pain in his right hip for the past week.  He was given a shot of toradol.  AR 404.

On February 14, 2003, Dr. Nguyen refilled Plaintiff's Tylenol #3 and filled out his disability form.  AR 273.

On May 20, 2003, Plaintiff saw Vinay K. Buttan, M.D, for a consultive examination.  He complained of a history of pain in his back since his 2001 accident.  Plaintiff also indicated that he is able to work at McDonald's.  On examination, his gait was normal.  Tenderness was present from L1 to L5.  Range of motion in all joints was normal, and straight-leg raising was negative in both legs.  Dr. Buttan diagnosed back pain secondary to accident, as per history.  He noted that he did not have any X-rays or MRIs to confirm this.  On the basis of the physical examination, he believed that Plaintiff could sit for about five to six hours in an eight hour day, stand for about

5

four to six hours and walk for about four to six hours.  He could lift up to 20 pounds frequently, and could infrequently bend, stoop and crouch.  AR 256-257.

Plaintiff saw Michael S. Barnett, M.D., for a consultive psychiatric evaluation on June 6, 2003.  Plaintiff reported that he works at McDonald's for 10-20 hours a week, though he has never held a full time job.  Plaintiff complained only of migraines.  On mental status examination, Plaintiff was talkative, mildly depressed and slow.  He had mild psychotic symptoms that Dr. Barnett believed were secondary to post traumatic stress disorder ("PTSD").  His recent memory was intact.  Dr. Barnett diagnosed PTSD, acute depression and possible psychotic symptoms, though he believed that the psychotic symptoms were related to the PTSD.  Dr. Barnett also believed that Plaintiff was mentally retarded and needed psychiatric treatment.  Plaintiff's GAF was 54.  He suggested an anti-convulsant medication for Plaintiff's headaches and possibly for his mood symptoms and psychotic symptoms.  Dr. Barnett further noted that despite his symptoms, Plaintiff was working half-time.  AR 259-260.

Dr. Barnett believed that Plaintiff was struggling and putting out "maximum effort" with his half-time position.  He would have no difficulty understanding, remembering or carrying out simple or complicated job instructions.  It was unclear whether Plaintiff could work on a full-time basis.  AR 261.  In a separate assessment, Dr. Barnett believed that Plaintiff would have moderate limitations in understanding, remembering and carrying out simple and detailed instructions, as well as moderate limitations in his ability to make judgments on simple work-related decisions.  He had slight limitations in his abilities to interact and adapt.  AR 263-264.

Plaintiff returned to Dr. Nguyen on September 8, 2003, and requested that his disability forms be completed.  On examination, he had mild tenderness on the lumbar spine.  Straight leg raising was negative bilaterally.  Dr. Nguyen believed that Plaintiff could work full-time but could not handle over ten pounds.  AR 410.

Charles House, Ph.D., performed a consultive psychiatric examination on September 16, 2003.  Plaintiff reported periods of depression and anxiety, but explained that they do not interfere with his ability to work.  He also has chronic pain and sleep problems.  On mental status examination, Plaintiff's speech was productive and excessive, and his vocabulary was below

6

average. His thinking was logical and well-organized. He had no impairment in attention, concentration, and memory, though he was limited intellectually. He diagnosed adjustment disorder, mixed emotional features, anxious and depressed mood, and borderline intelligence. The prognosis for his adjustment disorder was guarded and Dr. House believed that Plaintiff would not likely improve significantly in the next 12 months. AR 265-270.

Dr. House believed that Plaintiff could perform simple, repetitive tasks, but may have difficulty with more complex tasks. He would not have difficulty interacting or adapting. AR 270-271.

Plaintiff returned to Dr. Nguyen on August 30, 2004, to refill his Motrin. Plaintiff reported that he was fired from McDonald's in February. Dr. Nguyen refilled his prescription and advised Plaintiff to lose weight. He also denied Plaintiff's request for a disabled parking permit, explaining that he did not qualify for one. AR 408.

On January 26, 2005, State Agency physician Brian Ginsburg, M.D., completed a Physical Residual Functional Capacity Assessment. He opined that Plaintiff could occasionally lift 20 pounds, 10 pounds frequently. Plaintiff could stand and/or walk for about six hours and could sit for about six hours. Plaintiff had no postural, manipulative, visual, communicative or environmental limitations. AR 419-428. This opinion was affirmed on June 15, 2005. AR 426.

On February 1, 2005, State Agency physician Archimedes Garcia, M.D., completed a Mental Residual Functional Capacity Assessment. He opined that Plaintiff could perform simple, routine tasks in the work place. He could also adapt, adjust and interact appropriately, but only if performing simple, routine tasks. AR 431-433.

Plaintiff continued to complain of back pain in April and May 2005. AR 511-513.

X-rays taken on May 31, 2005, revealed partial sacralization of vertebral body L-5 bilaterally and decreased intervertebral disc spaces at the L4-5 and L5-S1 levels. AR 508.

X-rays taken on June 17, 2006, revealed osteoarthritic changes in the thoracic spine. AR 506.

In August 2005, Plaintiff was authorized for physical therapy treatments. On August 24, 2005, his treatment was discontinued and he was noted to have improved. Although his pain was

"fairly high," Plaintiff reported that there was a 40 percent improvement. He could bend over with less pain and could stand for 30 minutes. AR 453-456.

In November 2005, Plaintiff complained of "extreme back pain" since his accident in 2001. AR 486-488.

Plaintiff continued to complain of back pain in December 2005, and January, February, May and July 2006. AR 460-474, 483.

X-rays taken on March 10, 2006, revealed partial sacralization of vertebral body and decreased intervertebral disc spaces at the L4-5 and L5-S1 levels. AR 520.

On July 21, 2006, he was seen for continuing back pain. AR 460.

On August 28, 2006, Plaintiff presented again with back pain. He indicated that his back always hurt. AR 514.

ALJ's Findings

At the outset of his decision, the ALJ explained that he had previously granted Plaintiff a closed period of disability from August 11, 2001, through June 1, 2003. AR 19. Plaintiff then returned to work at the light level of exertion. The ALJ determined that the presumption of continuing non-disability did not apply because Plaintiff presented new and material evidence, and explained that the prior January 29, 2004, decision is res judicata as to the period through that date.

The ALJ determined that Plaintiff had the severe impairments of (1) borderline intellectual functioning; (2) status post motor vehicle accident with head injury and pelvic fracture; (3) thoracic spine osteoarthritic changes; and (4) lumbar spine degenerative disease, partial L-5 sacralization and minimal disc bulge at L5-S1. AR 22. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally, 10 pounds frequently, and to stand, walk and sit for six hours. Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. AR 22.

Based on this RFC and the VE testimony, the ALJ determined that Plaintiff could return to his past work as a fast food worker as it is performed in the national economy. Alternatively,

Plaintiff could perform a significant number of light jobs that exist in the national economy. AR 23-24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

1    In an effort to achieve uniformity of decisions, the Commissioner has promulgated
2 regulations which contain, inter alia, a five-step sequential disability evaluation process. 20
3 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ
4 found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of
5 her disability; (2) has an impairment or a combination of impairments that is considered "severe"
6 (borderline intellectual functioning; status post motor vehicle accident with head injury and
7 pelvic fracture; thoracic spine osteoarthritic changes; and lumbar spine degenerative disease,
8 partial L-5 sacralization and minimal disc bulge at L5-S1) based on the requirements in the
9 Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of
10 impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,
11 Regulations No. 4; but (4) retains the RFC to perform his past relevant work as a fast food
12 worker as it was performed in the national economy. AR 21-23. Alternatively, Plaintiff could
13 perform a significant number of positions in the national economy. AR 24.
14    Plaintiff argues that the ALJ erred in (1) failing to find that his mental condition meets or
15 equals Section 12.05C of the Listing; (2) failing to acknowledge the opinions of Dr. Barnett and
16 Dr. Lessenger; and (3) finding Plaintiff not credible.

17                               **DISCUSSION**
18 A.    Listing 12.05(C)
19    Plaintiff first argues that the ALJ erred in failing to find that his borderline intellectual
20 functioning met or equaled Listing 12.05(C). Plaintiff bases his argument on the ALJ's finding
21 in his prior decision that he met 12.05(C), and the fact that the psychological/psychiatric
22 assessments had not changed.
23    The listings of impairments describe impairments "that are considered severe enough to
24 prevent an adult from doing any gainful activity." 20 C.F.R. § 416.925(a). Most of these
25 impairments are permanent or expected to result in death. *Id.* For all other impairments, the
26 evidence must show that the impairment has lasted or is expected to last for a continuous period
27 of at least 12 months. *Id.* If a claimant's impairment meets or equals a listed impairment, he or
28 she will be found disabled at step three without further inquiry. 20 C.F.R. § 416.920(d).

To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets all of the medical criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1526(a), 416.926(a). Under the law of this circuit, "[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990).

Listing 12.05 provides:

[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

To satisfy subsection C, a claimant must have (1) a valid verbal, performance, or full scale IQ of 60 to 70; and (2) a physical or other mental impairment imposing additional and significant work-related limitation of function. *Id.*

First and foremost, Plaintiff is incorrect in suggesting that simply because the evidence had not changed from the prior hearing, the ALJ was bound by his prior finding regarding 12.05(C). In the prior decision, the ALJ found that Plaintiff met 12.05(C) for the *closed period* of August 11, 2001, through June 1, 2003. AR 31. This necessarily means that the ALJ determined that Plaintiff did not meet or equal 12.05(C) after June 1, 2003, likely due to Plaintiff's returning to work on June 2, 2003.[3] AR 32. Therefore, because the prior decision did not involve a finding that Plaintiff met or equaled 12.05(C) after June 1, 2003, his argument that the finding must carry over to the current disability period, beginning in July 2004, must fail.

---

[3] Prior to the January 2004 hearing, Plaintiff requested that his application be amended to request a closed period of disability from August 11, 2001, through June 1, 2003. AR 29. The ALJ granted the request, noting that Plaintiff returned to work on June 2, 2003. AR 32.

11

In the instant decision, the ALJ explained that he reviewed the evidence in light of 12.05(C) and determined that Plaintiff neither met nor equaled the listing. AR 22. This determination was supported by substantial evidence and free of legal error.

Plaintiff alleged disability beginning in July 2, 2004, making the reports of Dr. Lessenger (January 2002) and Dr. Barnett (June 2003), upon which Plaintiff relies, not the most probative evidence of Plaintiff's mental state during the relevant time period. While they were relevant to the ALJ's prior decision, they do not cast much light on Plaintiff's mental condition as it existed after July 2, 2004. Plaintiff's reliance on these reports, then, is unavailing.

In fact, there is no evidence of any psychological treatment after Dr. House's examination in September 2003. The only relevant evidence of Plaintiff's mental capacity is a February 2005 Mental Residual Functional Capacity Assessment completed by State Agency physician Archimedes Garcia, M.D. He opined that Plaintiff could perform simple, routine tasks in the work place. He could also adapt, adjust and interact appropriately, but only if performing simple, routine tasks. AR 431-433. This is consistent with the ALJ's RFC.

Plaintiff's argument is without merit and must be denied.

B.   Treatment of Consultive Physicians' Opinions

In a similar argument, Plaintiff faults the ALJ for not citing the opinions of Dr. Lessenger and Dr. Barnett. He also contends that the ALJ erred by failing to give reasons for rejecting the opinions.

Contrary to Plaintiff's position, an ALJ need not discuss all evidence. Rather, he must explain why "significant probative evidence has been rejected." <u>Vincent on Behalf of Vincent v. Heckler</u> 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (internal citations omitted). Here, for the reasons by discussed above, the reports of Dr. Lessenger and Dr. Barnett were neither significant nor probative.

Plaintiff's argument is without merit.

C.     Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ erred in rejecting Plaintiff's credibility.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In analyzing Plaintiff's credibility, the ALJ first noted that Plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms, but not to the extent Plaintiff suggests. AR 23. First, the ALJ noted that Plaintiff did not quit work on July 2, 2004, the alleged onset date, but was fired for "not following directions, for bad hygiene, and because the manager did not like him." AR 23. It appears that the ALJ believed that because Plaintiff was fired, rather than leaving because of the impact of his impairments, Plaintiff's allegations could not be as severe as he alleged.

13

Plaintiff believes that the fact that he was fired, in part, for failing to follow directions, "supports his condition of mental retardation and his inability to follow simple repetitive tasks." Opening Brief, at 12.  However, neither the relevant medical evidence nor Plaintiff's own testimony support a finding that he is mentally retarded or that he cannot perform simple, repetitive tasks.  The statement that he was fired for not following directions, which came from a Third Party Questionnaire completed by Plaintiff's friend,[4] is not enough to call into question the substantial evidence that indicates otherwise.

Next, the ALJ explained that Plaintiff "does volunteer work at the Food Bank, all day, every day."  AR 23.  He also noted Plaintiff's "wide range of daily activities," such as driving 10 times a day to visit friends, cooking meals, doing dishes, shopping once a week, eating out once a week, washing clothes at the laundromat, sweeping, doing yard work for two hours a day, taking care of his pets, watching television and taking care of his personal needs.  AR 23.  The ALJ is entitled to assess Plaintiff's daily activities in determining credibility and where, as here, Plaintiff performs a wide range of daily activities, the ALJ may conclude that he is not as disabled as alleged.  *Thomas v. Barnhart*, 278 F.3d 947, 959-960 (9th Cir. 2002).  While the Court agrees that the evidence does not necessarily support a finding that Plaintiff volunteers "all day, every day," the ALJ correctly relied on Plaintiff's wide array of other daily activities to support his credibility analysis.  *See eg., Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

Finally, the ALJ explained that none of Plaintiff's treating physicians imposed physical limitations on Plaintiff, and one treating source, Dr. Nguyen, indicated that he did not meet the standard of a handicapped license plate.  AR 23.  This is an accurate reflection of the medical evidence, and the ALJ was entitled to compare the medical evidence with Plaintiff's allegations. SSR 96-7p; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  To the extent that Plaintiff cites objective evidence to support his credibility, the ALJ indeed found that Plaintiff suffered

---

[4] Plaintiff's own questionnaire indicated that he was fired because his manager didn't like him and didn't want him to work there.  A R 354.

14

1  from severe impairments.  The evidence does not, however, suggest that the *impact* of these
2  impairments is as severe as Plaintiff alleges.
3      The ALJ is entitled to resolve questions of credibility and conflicts in the testimony.
4  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Here, the ALJ's credibility
5  determination was supported by substantial evidence, and was sufficiently specific to permit the
6  Court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.  *Thomas v.*
7  *Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

## CONCLUSION

9      Based on the foregoing, the Court finds that the ALJ's decision is supported by
10 substantial evidence in the record as a whole and is based on proper legal standards.
11 Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the
12 Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in
13 favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,
14 Albert Barrett.

16    IT IS SO ORDERED.
17    Dated:   **January 30, 2009**                    /s/ **Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE